IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |
|---|---|
| ) | 2 CA-MH 2003-0004-SP |
| ) | DEPARTMENT A |
| IN RE THE COMMITMENT OF ) | |
| JERRY MICHAEL CONN ) | O P I N I O N |
| ) | |
| ) | |
| ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. A-20020017

Honorable Lina S. Rodriguez, Judge

REVERSED

Barbara LaWall, Pima County Attorney
  By Amy Pignatella Cain                                                                Tucson
                                                                Attorneys for Appellant

Barton & Storts, P.C.
  By Brick P. Storts, III                                                                Tucson
                                                                Attorneys for Appellee

H O W A R D, Judge.

¶1        The state appeals from the trial court's order of January 28, 2003, dismissing civil

commitment proceedings brought against appellee Jerry Michael Conn pursuant to Arizona's

Sexually Violent Persons (SVP) Act, A.R.S. §§ 36-3701 through 36-3717 ("the Act"), and

ordering Conn's immediate release from the Arizona State Hospital.  At issue is whether sex

crimes Conn had admitted having committed, in return for a promise that he would not be

prosecuted for them, may later form the basis for an expert's opinion that he is or may be a sexually violent person. Reviewing this question of law de novo, *State v. Hoggatt*, 199 Ariz. 440, ¶4, 18 P.3d 1239, ¶4 (App. 2001), we hold his admissions may be considered by the experts in these SVP proceedings and that the trial court erred in concluding otherwise.

¶2　　　　In 1981 a jury found Conn guilty of second-degree burglary, theft, and three counts of sexual assault. The sexual assaults, which involved one victim on a single occasion, are Conn's only convictions of sexually violent offenses for purposes of § 36-3701(6) and (7). While in custody on a different charge, however, Conn had "cleared" five other pending sexual assault cases for a Tucson police detective. The detective promised Conn he would not be prosecuted for those crimes in return for his cooperation in solving them.

¶3　　　　Conn was never charged with the other five sexual assaults, but the trial court later "used the admitted sexual assaults as an aggravating circumstance in imposing sentence." *State v. Conn*, 137 Ariz. 148, 149, 669 P.2d 581, 582 (1983). On appeal, the supreme court found Conn's statements to the detective about these assaults had been involuntary, having been induced by a promise of leniency, and held the trial court's "u[se] of an involuntary confession to enhance punishment constituted fundamental error." *Id.* at 151, 669 P.2d at 584. As a result, Conn's original, aggravated sentences were vacated, and he was resentenced to lesser terms on four of his five convictions.

¶4　　　　Before his scheduled release from prison in August 2002, the state instituted these SVP proceedings, petitioning for Conn's detention and evaluation pursuant to §§ 36-3704 and 36-3705. Because Conn had declined to participate in a screening examination, Dr. Sergio Martinez had performed the preliminary psychological evaluation required by § 36-3702(9)(a) by examining

2

pertinent records furnished by the Department of Corrections. In reaching his conclusion that Conn might be a sexually violent person and recommending that these proceedings be commenced, Dr. Martinez took into account the five sexual offenses Conn had admitted.

¶5 Pursuant to § 36-3705(C), Conn subsequently requested a probable cause hearing, at which Dr. Martinez testified. According to the trial court's minute entry ruling, Dr. Martinez "testified that without consideration of the alleged other rapes . . . Mr. Conn does not fit the diagnosis of a sexually violent offender pursuant [to] the [SVP] statute."[1] After a further hearing, the trial court ruled that the five uncharged rapes Conn allegedly had admitted[2] could not be considered in determining whether he meets the definition of a sexually violent person. The trial court therefore granted Conn's motion to preclude the detective's testimony concerning those admissions and ordered the SVP proceedings dismissed for lack of sufficient evidence.

¶6 The trial court explained the basis for its ruling as follows:

> [B]ased on the law of the case, based on the Constitutional assertions of the Respondent [Conn] as well as those cited by the Arizona Supreme Court in *Conn*, based on the unusual circumstances herein where Detective Kohlman indicates his promise and the State's agreement not to prosecute or otherwise enhance Mr. Conn's "punishment" by use of the other five alleged rapes, in court, the Court finds that Dr. Martinez may not rely upon said acts as a foundation for his opinion herein.

The court's further comments reveal that it viewed confinement under the SVP Act as punitive in nature and therefore barred, in Conn's case, by the police detective's promise—and the supreme

---

[1]The record before us does not include a transcript of that hearing, but the state has not disputed the trial court's statement.

[2]Conn has subsequently denied both committing the five rapes and admitting them to the detective.

3

court's later holding—that Conn's admissions could not be used either to prosecute him or to enhance his punishment in any way.

¶7 As the United States Supreme Court and Arizona's appellate courts have repeatedly held, commitment proceedings under the SVP Act are strictly civil in nature. *Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 870, 151 L. Ed. 2d 856, 862 (2002); *Seling v. Young*, 531 U.S. 250, 260, 121 S. Ct. 727, 733, 148 L. Ed. 2d 734, 745 (2001); *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S. Ct. 2072, 2085, 138 L. Ed. 2d 501, 519 (1997); *Allen v. Illinois*, 478 U.S. 364, 374, 106 S. Ct. 2988, 2994, 92 L. Ed. 2d 296, 307 (1986); *In re Leon G.*, 204 Ariz. 15, n.1, 59 P.3d 779, n.1 (2002); *State ex rel. Romley v. Superior Court*, 198 Ariz. 164, ¶6, 7 P.3d 970, ¶6 (App. 2000); *Martin v. Reinstein*, 195 Ariz. 293, ¶36, 987 P.2d 779, ¶36 (App. 1999). The legislature's provision of some of the safeguards applicable in criminal trials—the rights to counsel, to trial by jury, to confront and cross-examine witnesses, and to proof beyond a reasonable doubt—does not transform SVP proceedings into criminal prosecutions with "the full panoply of rights applicable there." *Allen*, 478 U.S. at 372, 106 S. Ct. at 2993, 92 L. Ed. 2d at 306.

¶8 Among the consequences flowing from the civil nature of SVP proceedings is that constitutional protections against double jeopardy and *ex post facto* laws are not implicated. *Seling*. Another is that the Fifth Amendment privilege against compulsory self-incrimination does not apply. In *Allen*, the Supreme Court expressly declined to hold "that the Due Process Clause of its own force requires application of the privilege against self-incrimination in a noncriminal proceeding, where the privilege claimant is protected against his compelled answers in any subsequent criminal case." 478 U.S. at 374, 106 S. Ct. at 2995, 92 L. Ed. 2d at 308; *see also*

4

*State ex rel. Romley v. Sheldon*, 198 Ariz. 109, ¶12, 7 P.3d 118, ¶12 (App. 2000). That is precisely the situation here. Conn has not been, nor may he be, prosecuted criminally for any of the offenses to which he confessed in return for the promise of immunity. *Conn.*

¶9        Further, as the Supreme Court made clear in *Allen*, due process does not independently require application of the Fifth Amendment privilege against self-incrimination in noncriminal proceedings:

> The privilege against self-incrimination enjoined by the Fifth Amendment is not designed to enhance the reliability of the factfinding determination; it stands in the Constitution for entirely independent reasons. *Rogers v. Richmond*, 365 U.S. 534, 540-41, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961) (involuntary confessions [are] excluded "not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system").

478 U.S. at 375, 106 S. Ct. at 2995, 92 L. Ed. 2d at 308. Hence, the Supreme Court in *Allen* affirmed the Illinois Supreme Court's holding that the privilege against self-incrimination was not available in that state's "sexually-dangerous-person proceedings" because such proceedings are essentially civil, not punitive, in nature. *Id.* at 367-68, 106 S. Ct. at 2991, 92 L. Ed. 2d at 303.

¶10        Likewise, proceedings under Arizona's SVP Act are not criminal prosecutions but civil commitment proceedings whose aim is not to punish but to provide sex offender treatment while simultaneously protecting the public. *Leon G.* "The privilege against self-incrimination applies only where the witness is in danger of facing *criminal* liability. There is no equivalent privilege to refuse to testify to avoid *civil liability*. . . . Thus, there is no proscription against using compelled immunized testimony against a witness in a civil proceeding." *Tracy v. Superior Court*, 168 Ariz. 23, 43, 810 P.2d 1030, 1050 (1991) (citations omitted).

5

¶11 Because SVP proceedings have been definitively held to be civil, not criminal, in nature, the trial court erred by viewing these proceedings as a further punitive consequence resulting from Conn's admissions to the other assaults, rather than as an involuntary civil commitment proceeding. *See Martin*, 195 Ariz. 293, ¶¶32-33, 987 P.2d 779, ¶¶32-33. As a result, the trial court erroneously ruled that an expert's consideration of Conn's involuntary admissions in these proceedings would violate the state's promise of immunity as well as the supreme court's express holding in *Conn.* We hold that Dr. Martinez properly could consider Conn's confessions in evaluating Conn and formulating his expert opinion.

¶12 The trial court also predicated its ruling "on the law of the case" doctrine. Conn argues the doctrine should apply here, making the supreme court's holding in *Conn* the law of the case and preventing the use of his admissions in this context. The law-of-the-case doctrine is "a rule of procedure, not substance," *State v. King*, 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994), to which many exceptions have been recognized. *Dancing Sunshines Lounge v. Indus. Comm'n*, 149 Ariz. 480, 482-83, 720 P.2d 81, 83-84 (1986). When applied, the doctrine serves generally to afford finality to any ruling of a trial or appellate court and to prevent rulings once made from being revisited later. *See King*; *In re Monaghan's Estate*, 71 Ariz. 334, 336, 227 P.2d 227, 228 (1951). The doctrine does not bar consideration of Conn's admissions in this context, however, because use by an expert in a civil commitment proceeding presents a different question than admissibility for purposes of prosecution or punishment, and the supreme court's ruling in *Conn* barred only the latter.[3]

---

[3]For similar reasons, the doctrine of collateral estoppel likewise does not apply. It, too, requires, among other criteria, that the issue being litigated be identical to an issue previously

¶13     Reversed.


 

_____
          JOSEPH W. HOWARD, Judge

CONCURRING:



_____
J. WILLIAM BRAMMER, JR., Presiding Judge



_____
M. JAN FLÓREZ, Judge

---

litigated between the same parties. *Fitzgerald v. Superior Court*, 173 Ariz. 539, 546, 845 P.2d 465, 472 (App. 1992). However, the trial court here did not cite collateral estoppel as a basis for its decision, nor has Conn argued explicitly that it applies. Rather, the state argues it does not apply on the ground that "Conn's 'law of the case' argument seems to also include a collateral estoppel issue." Because the trial court did not invoke collateral estoppel as a basis for its ruling, any further discussion of the doctrine is unnecessary.